FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 OCT 30 PM 3: 18

U.S. DISTRICT COURT
N.D. OF ALABAMA

ANTHONY JACKSON,              }
                             }
        Plaintiff             }
                             }       CIVIL ACTION NO.
    vs.                       }
                             }       CV-96-1297-S          cRo
THE BOARD OF TRUSTEES OF THE  }
UNIVERSITY OF ALABAMA AT      }
BIRMINGHAM, et al.,           }
                             }       **ENTERED**
        Defendants            }

OCT 3 0 1997

### MEMORANDUM OPINION

The court has before it defendants' motion for summary
judgment and plaintiff's motion to strike evidence filed by the
defendants in support of their Rule 56 motion after the submission
deadline. For reasons explained more fully below, defendants'
motion for summary judgment will be granted in part and denied in
part. Defendants are entitled to summary judgment on plaintiff's
failure-to-promote disparate treatment claim and plaintiff's
termination claims. In addition, summary judgment is appropriate
on plaintiff's §§ 1981 and 1983 race retaliation claims.
Plaintiff's other claims survive Rule 56 scrutiny.

At this court's October 17, 1997 motion docket, plaintiff
raised objections to defendants' motion to file evidence beyond the
summary judgment submission deadline. Defendants' motion was
granted by this court on October 20, 1997. Accordingly,

35

plaintiff's motion has become moot.

## **Undisputed Pertinent Facts**

In the present action, plaintiff, Anthony Jackson ("Jackson") sues The Board of Trustees Of the University of Alabama ("UAB") for alleged race discrimination and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  Jackson has joined as a defendant, Brooks Baker, a UAB employee, both in his individual and official capacities, invoking 42 U.S.C. §§ 1981 and 1983.  Jackson alleges both disparate treatment and retaliation by virtue of (1) working conditions, (2) denial of promotion, and (3) discharge.

Jackson, a black male, was a supervisor in UAB's Department of Building Services until UAB promoted him to the position of Assistant Director in October 1990.  His promotion came about as a result of a consent decree entered into between UAB and a class of plaintiffs consisting of black employees.  *See Woods v. Board of Trustees*, CV-87-C-2182.  Before the parties terminated CV-87-C-2182 by consent decree, Jackson testified in the case as a witness for plaintiff.

As an Assistant Director in the Department of Building

2

Services, Jackson managed a staff that consisted of two supervisors. His white counterparts, however, managed a staff consisting of three supervisors. On September 1, 1994, pursuant to the grievance procedure established in *Woods*, Jackson filed a grievance over this allegedly discriminatory treatment. On October 12, he filed a charge with the Equal Employment Opportunity Commission ("EEOC") over the alleged supervisor disparity, and, on October 30, UAB hired a third supervisor to work under Jackson. Defendants in the present case do not contend that the grievance machinery set up in *Woods* was exclusive and precludes Jackson's access to the EEOC or to this court.

On May 12, 1995, Hon. U. W. Clemon of this court, who had presided over *Woods*, held that the terms of the *Woods* consent decree had been "substantially complied with" and therefore that the decree was to be dissolved. Defendant's Brief In Support Of Motion For Summary Judgment, Ex. D at 84. Judge Clemon indicated that he would enter an order to that affect, but no such order was ever expressly entered. *See* Docket Sheet May 12, 1995 court reporter entry. The record does, however, satisfy this court that the decree was effectively dissolved.[1]

---

[1] On March 25, 1996 Judge Clemon granted defendants' motion to dismiss in *Woods v. Governor Guy Hunt, et al.*, (CV-87-C-2182-S), after defendants argued that dismissal of the suit was justified, *inter alia*, because the consent decree in *Woods* had been dissolved. *See* Docket Sheet Document #224.

In June 1995, Oscar Skipwith ("Skipwith") retired from his position as Director of the Department of Building Services. Brooks Baker ("Baker"), a white male upper management employee, then appointed Dorothy Webster ("Webster"), a black female, to the position of "Acting" Director. Webster had less seniority than Jackson, and she remained in the "Acting" Director position for over two years.

In January 1996, UAB hired a consulting firm to prepare a restructuring proposal for the Building Services Department. Part of the consultant's recommended restructuring plan consisted of eliminating the Assistant Director positions. On May 17, 1996, Jackson filed this action, and on May 29, 1996, UAB terminated Jackson, along with the other Assistant Directors, who were white. Webster's position as Acting Director was not eliminated at that time. However, at the time of Baker's deposition, the plan was to eliminate Webster's position.

## Summary Judgment Standard

Rule 56 states in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

4

F.R.Civ.P. 56(c).  The Eleventh Circuit stated the obvious when it observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a mater of law."  *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994).

## Analysis

### I. Terms & Conditions of Employment

### A. Disparate Treatment Claim: Supervisor Disparity

Jackson claims that he was treated differently from similarly situated white Assistant Directors because UAB provided them with three supervisors to oversee their staff, whereas UAB provided Jackson with only two supervisors.  Therefore, claims Jackson, he was forced to assume duties as Assistant Director while also assuming the duties of the missing third supervisor. Given the undisputed evidence that Jackson was assigned only three supervisors and his white counterparts were assigned three, Jackson establishes a prima facie case of disparate treatment.

UAB counters that budgetary restraints prohibited it from hiring an additional supervisor.  In addition, argues UAB, "[n]o matter how many supervisors he had...there is no dispute that he

had the authority to assign supervisory duties to those supervisors as he saw fit." Defendant's Response to Plaintiff's Reply at 9.

Jackson has ample evidence, however, to "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that [UAB's] proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538, *petition for cert. filed*, 66 U.S.L.W. 3171 (U.S. July 28, 1997) (No. 97-361). While UAB claims it was under budgetary constraints, at no point does UAB to explain or attempt to explain how it was suddenly able to hire a new supervisor less than two months after Jackson filed a grievance under the consent decree and only several weeks after his EEOC complaint. Indeed, UAB's elimination of the Assistant Director positions, seven months after hiring the new supervisor, arguably suggests that any budgetary problems which may have existed never disappeared. Additionally, UAB fails to offer any explanation as to why it never attempted to resolve the supervisor disparity using a non-fiscal solution. While it is true that Jackson was able to assign his supervisory duties as he saw fit, logic suggests that an Assistant Director is at a disadvantage when he must perform his administrative duties with fewer supervisory personnel than his counterparts. Without any evidence that Jackson required a smaller supervisory staff, Jackson presents sufficient

6

evidence to suggest that UAB's proffered reason for the disparity is pretextual. Therefore, Jackson's claim of disparate treatment in the terms and conditions of his employment survives summary judgment.

**B. Retaliation Claim: Supervisor Disparity.**

Jackson also alleges that UAB retaliated against him for his testimony in *Woods* by refusing to remedy the supervisor disparity. The situation Jackson complains about arose immediately after Jackson's promotion from supervisor to Assistant Director, which left his supervisor position unfilled. UAB contends that plaintiff fails to make out a prima facie case for retaliation. Specifically, UAB maintains that Jackson's testimony in Woods is "too far removed in time from all of the adverse action alleged in the complaint." Defendant's Brief at 16. Therefore, plaintiff has not shown a causal connection between the allegedly retaliatory conduct and plaintiff's protected activities, UAB maintains.

UAB's argument is without merit at this juncture. Jackson's testimony in *Woods* occurred in 1990, and the supervisor disparity began that same year on the day he became an Assistant Director. Given such timing, plaintiff clearly meets the causation requirement. Furthermore, the same evidence that could lead a jury to find pretext on Jackson's disparate treatment claim also

7

supports his retaliation claim.

### C. Retaliation Claim: Poor Performance Ratings.

Plaintiff also presents enough evidence to survive summary judgment on his retaliation claim for the poor performance rating he received after he filed his grievance over the supervisor disparity. In his first year as an Assistant Director, Jackson received a performance rating of two ("Meets standard level of performance") out of four, and the next year he received a rating of three ("Frequently exceeds standard level of performance"). There is no evidence that UAB evaluated him in 1993, his third year as Assistant Director. In his fourth year, however, he received a rating of one ("Occasionally meets standard level of performance"), less than thirty days after he had filed the grievance over the supervisor disparity. In addition, the day after the grievance was initiated, UAB issued a memorandum documenting Jackson's "failure to maintain satisfactory interpersonal relationships]...." Plaintiff's Ex. 31 to Skipwith Depo. Occurring less than thirty days after Jackson engaged in protected activity, these disciplinary actions satisfy the causation prong of Jackson's retaliation prima facie case for Rule 56 purposes.

UAB explains the lowered performance rating by pointing to complaint letters it received from building tenants regarding the

8

poor condition of the buildings Jackson maintained.   Indeed, Jackson does not dispute that UAB received such complaints from some time in 1993 until 1995.

Yet, there is sufficient evidence upon which a jury could find that the complaints were not the true reasons for Jackson's lowered performance rating. In the past, UAB had evaluated Jackson during the summer months. However, this time for some unexplained reason, UAB failed to evaluate Jackson for two consecutive summers spanning a period of over twenty-five months (August 1992 until September 1994). Then, suddenly, it decided that an evaluation was necessary within weeks after he filed his grievance.   In addition, it is unusual, if not ominous, that UAB did not evaluate Jackson in 1993 when it first began receiving letters regarding the condition of the buildings he managed. Further, there is evidence that Jackson operated at a disadvantage because his staff was short by one supervisor.   Thus, even if his lowered performance rating was justified, there is evidence from which a jury might conclude that UAB itself was partially responsible for Jackson's failure to adequately perform. Accordingly, Jackson's retaliation claim for the lowered performance rating survives summary judgment.

## II.   Denial of Promotion

9

## A. Disparate Treatment

Jackson claims that he was denied the Acting Director position because of his race and in retaliation for engaging in protected activity. UAB points out that it promoted Dorothy Webster, a black female, to the position of Acting Director. Of course, appointing a black person to the position is not a *per se* defense to Jackson's failure-to-promote claim. "Title VII does not 'give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.'" *Nix v. WLCY Radio*, 738 F.2d 1181, 1185 (11th Cir. 1984). Nevertheless, Jackson can point to no evidence that he was treated disparately because of his race. Instead Jackson points out that UAB failed to follow its own promotion policy when it appointed Webster.[2] Rather than suggesting <u>disparate treatment</u>, his evidence instead supports his failure-to-promote <u>retaliation</u> claim.

The "Facilities Management Guideline Manual,"[3] dated November 16, 1993 and signed by defendant Baker, indicates that the

---

[2] Contrary to the assertions made by Jackson, the promotion policies found in the *Woods* consent decree are not applicable to Jackson's promotion claim. *See* Plaintiff's Brief In Opposition To Summary Judgment at 27. The consent decree was effectively dissolved on May 12, 1995, over one month before the Director of Building Services position became available by virtue of Oscar Skipwith's retirement.

[3] The Department of Building Services is a subdivision of the Facilities Management Department.

department's policy is to "promote the <u>qualified</u> applicant with the earliest service date to fill any vacancy." Plaintiff's Motion, Exhibit #2 (UAB Bates #1533) (emphasis added). There is nothing in the record to indicate that this policy may be disregarded when an "acting" rather than a "permanent" position is at issue.

On July 1, 1995, the Building Services directorship became available when Oscar Skipwith retired. According to the promotion policy, the directorship should have gone to Duel Morrow, a white male Assistant Director, who had the highest seniority date. However, on July 17, Morrow went on a medical leave of absence. With Morrow out on leave, Jackson was the Assistant Director with the next highest seniority date. Rather than to follow the promotion policy and to appoint Jackson to the position, Baker appointed Webster who had less seniority than Jackson. Webster remained in the "Acting" directorship for over two years. Baker admits that he knows of no other instance, in the Facilities Management Department, where an individual remained in an "acting" position for two years. Baker Depo. at 22 - 23.

UAB's failure to follow its written promotion policy could lead a reasonable fact-finder to believe that UAB's proffered reasons for promoting Webster were pretextual.

Oftentimes, departures from well established guidelines are

11

indicative of attempts to conceal a discriminatory motive through the use of ad hoc criteria which allow the defendant to cloak a discriminatory intent in ostensibly neutral rationales. [The Eleventh Circuit] has concluded that selection processes which are conducted in an ad hoc or discretionary manner must be viewed with particular suspicion.

*Brown v. American Honda Motor Co.*, 939 F.2d 946, 951 - 52 (11th Cir. 1991)(citations omitted), *cert. denied*, 502 U.S. 1058, 112 S. Ct. 935 (1992).

UAB claims that it promoted Webster because she exhibited "superior work performance" and that she was the only Assistant Director who had not applied for the permanent position.[4] Jackson, as well as the two other Assistant Directors, Duel Morrow and Martha Thacker, had applied for the permanent position. Webster's appointment to the position was the most equitable alternative, asserts UAB, because appointing one of candidates for the permanent position would have given that candidate an advantage in the selection process.

In this context, however, these proffered reasons are suspect. First, the seniority policy generally alleviates any need for an "acting" position because a lengthy search for the perfect candidate could not be undertaken. Indeed, the policy document states decision makers need not even interview less senior

---

[4] Webster, who is black, was not an Assistant Director during 1990 - 1994 when the supervisor disparity occurred.

applicants.    "Facilities  Management  Guideline  Manual,"
Plaintiff's Motion, Exhibit #2 (UAB Bates #1533).  Even in the
unusual situation where an Acting Director was necessary, an
applicant for the permanent position could not gain an unfair
advantage, as UAB suggests, because the promotion policy indicates
seniority is controlling, among qualified candidates.  Finally, UAB
fails to explain why an "acting" position lasted for over two
years.

UAB also attempts to justify Webster's appointment by citing
her "superior work performance."   In contrast, Jackson's recent
poor performance rating disqualified him for the position and
therefore UAB did no violate its promotion policy, it asserts.
However, a jury could find that Jackson's poor performance ratings
were a result of retaliation or that the supervisor disparity
contributed to his poor performance rating.  All of this evidence,
taken together with Jackson's grievance and EEOC compliant some ten
months earlier, create sufficient doubt about UAB's proffered
reasons for appointing Webster.  *See Coutu v. Martin County Board
of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995)("This
circuit has interpreted the causal link requirement broadly; 'a
plaintiff merely has to prove that the protected activity and the
negative employment action are not completely unrelated.'").

Should this case make it to trial and Jackson prevail on his failure-to-promote retaliation claim, his recovery may be limited. Duel Morrow returned from his medical leave on September 5, 1995. Thus he was only on leave for a couple of months.  Assuming his medical condition did not disqualify him, Morrow was entitled to assume the directorship by virtue of his seniority.  Even if the college degree requirement disqualified him for the permanent position, Morrow was certainly entitled to the Acting Director position;  Webster who served in the position for two years did not have a college degree.  Therefore, Jackson could have remained Acting Director only until Morrow returned from leave. Accordingly, should Jackson recover, his damages will probably be limited to the time period between Webster's appointment and September 5, 1995, when Morrow returned from medical leave.

Contrary to Jackson's assertions, he does not have a claim for the entire two year period in which Webster occupied the position. Jackson argues that UAB realized Morrow was soon to retire and therefore Morrow was never actually in contention for the directorship.  However, Morrow did not retire prematurely; his position was eliminated along with Jackson's and the other Assistant Directors.  Moreover, Jackson cites to his own deposition to support his assertion that UAB knew of Morrow's supposedly imminent retirement.  Plaintiff's Brief at 7.  Such hearsay

14

testimony is completely unsupported by the record and therefore not worthy of discussion.

### III.  Discharge

Because Jackson asserts that UAB eliminated his position for discriminatory reasons, he may make out a prima facie case for discharge by showing:

(1) he is a member of a protected class and was adversely affected by the employment decision,

(2) he was qualified for his current position or to assume another position at the time of discharge; and

(3) "evidence by which a fact finder might reasonably conclude that [UAB] intended to discriminate...in reaching the decision at issue."

*Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 - 81 (11th Cir. 1990).  Jackson attempts to meet the third prong of his prima facie case by maintaining that UAB's purported budgetary problems were a pretext for his discharge.  First, Jackson maintains that UAB's failure to follow its promotion policies is evidence of discriminatory intent that supports his discharge claim.  He also notes that because the Acting Director position survived the reduction in force, he would not have lost his job had he been appointed to that position.  The record clearly shows, however, that upon Morrow's return from medical leave he was entitled to the

15

position, not Jackson.   UAB's failure to follow its promotion polices provides evidence of pretext for his promotion claim, but there is nothing to suggest pretext on Jackson's discharge claim.

Jackson also argues that the *Woods* consent decree establishes a "history of discrimination and retaliation" by UAB.   Plaintiff's Brief at 29.   It is telling, however, that plaintiff fails to direct this court to language in the decree arguably suggests an admission of liability.

Finally, and disingenuously, Jackson's counsel argues that there is no documentary evidence supporting UAB's assertion that the reduction in force was due to budgetary restraints.   Indeed, argues counsel, he requested documentation of the budget cut, but UAB refused his discovery request.   The record does not support this claim.   UAB responded to counsel's request for all budgetary documents by indicating that the documents would be "available for inspection and copying at a mutually convenient time and place...." Defendant's Notice of Filing, Oct. 14, 1997.  Nothing in the record indicates that counsel filed a motion to compel UAB to disclose the requested budget documents.   Given counsel's extensive litigation experience, the court is unwilling to believe that UAB failed to make these documents available and he has, until now, silently acquiesced in the face of a blatant discovery violation.

16

Moreover, there is admissible evidence which supports UAB's budgetary claims surrounding the reduction in force. Jackson's own termination letter includes admissible evidence that his termination was a result of a budget cut. Defendant's Exhibit 5 to Jackson Depo. That letter, which is admissible as a business record, explains that Jackson's position was being eliminated to "reduce expenses...in response to a directive by the President to balance the budget." *See id.;* F.R.E. 803(6). Therefore UAB has met any burden it has to produce admissible evidence of the budget cut. *Combs*, 106 F.3d at 1528 (noting that an "employer need only produce admissible evidence" to shift the burden to plaintiff). Additionally, UAB can prove that an independent consulting firm recommended the elimination of the Assistant Director positions.

Although the reduction in force occurred shortly after Jackson filed his complaint in this case, there is absolutely no evidence that UAB eliminated four Assistant Director positions simply in order to retaliate against Jackson. There is a point beyond which a jury's imagination cannot be allowed to stretch. Jackson simply has not produced any evidence to suggest pretext. Likewise, Jackson can not show disparate treatment, became similarly situated white employees were not treated comparatively favorably. Consequently, Jackson's discharge claims do not survive summary judgment.

17

### IV. Retaliation Claims Under §§ 1981 & 1983

Although the issue here addressed was not specifically raised by defendants, this court holds that summary judgment is appropriate on Jackson's race <u>retaliation</u> claims asserted under §§ 1981 & 1983. The law in this circuit prohibits equal protection <u>retaliation</u> claims asserted under §§ 1981 and 1983. *Watkins v. Bowden*, 105 F.3d 1344, 1354 - 55 (11th Cir. 1997) (citations omitted); *Ratliff v. DeKalb County*, 62 F.3d 338, 340 - 11 (11th Cir. 1995).[5] To the extent that Jackson links his retaliation claims to his race, his claims constitute an equal protection challenge. *See Watkins*, 105 F.3d at 1354. "A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause." *Id.* Indeed, noted the Eleventh Circuit Court of Appeals, "[w]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination." *Id.* at 1355 (quoting *Bernheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996)). Therefore, Jackson's § 1981 and § 1983 race retaliation claims do not survive summary judgment.

Unlike race retaliation claims, First Amendment retaliation

---

[5] Section 1981 and 1983 claims are analyzed in a similar fashion. *Busby v. City of Orlando*, 931 F.2d 764, 771 (11th Cir. 1991) ("The section 1981 claim has been effectively merged into the section 1983 claim for racial discrimination.").

claims are actionable under §§ 1981 and 1983. *Ratliff*, 62 F.3d at 340 (" The right to be free from retaliation is clearly established as a <u>first amendment</u> right and as a <u>statutory</u> right under Title VII; but no clearly established right exists under the <u>equal protection</u> clause to be free from retaliation.") (emphasis in original). In Jackson's summary judgment opposition brief, he, for the first time, raises First Amendment retaliation claims. Because Jackson failed to raise these claims in his last amended complaint, they cannot be pursued. Jackson's complaint repeatedly asserts claims of discrimination and retaliation based solely upon his race. Because his First Amendment retaliation claims are attempted after the expiration of the time for amending Jackson's complaint under the Rule 16(b) order, summary judgment is appropriate on those claims. *See Busby v. City of Orlando*, 931 F.2d 764, 771 n.4 (11th Cir. 1991) ("This circuit has required somewhat more specific pleading from section 1983 plaintiffs than from plaintiffs bringing other kinds of actions.")

### V.  Qualified Immunity Defense

In addition to his claims against UAB, Jackson also makes claims against Baker, an admitted employee of UAB, both in his individual and official capacities, pursuant to 42 U.S.C. §§ 1981 and 1983. Jackson's claim against Baker not previously addressed is for disparate treatment in the terms and conditions of Jackson's

employment.  Baker, in his individual capacity, requests summary judgment on this claim on the basis of qualified immunity.

Public officials are entitled to qualified immunity from "liability  for civil damages insofar as their conduct does not violate clearly established...rights of which a reasonable person would have known." *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir.)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738,(1982)), *cert. denied, Hill v. Clifton*, 117 S. Ct. 51, 136 (1996).  Baker concedes that protection from disparate treatment based upon race is a clearly establish right. Defendant's Brief at 19.  Under the Eleventh Circuit precedent, Jackson bears the burden of establishing that " a reasonable public official would not have believed that his actions were lawful, in light of clearly established law." *Johnson*, 74 F.3d at 1091. Baker argues, however, that *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996), a recent Eleventh Circuit case, imposes a more exacting burden on plaintiff.  In *Foy* the court finally got around to holding that where discriminatory <u>intent</u> is an element of the applicable constitutional tort and there is evidence of discriminatory motive, qualified immunity is only appropriate if "[n]o jury could find that it would have been unlawful for a [state official] to do as Defendants did if the [state official] lacked discriminatory intent." *Id.* at 1535.

20

Assuming that this court can decipher the convoluted reasoning in *Foy*, it becomes convinced that the *Foy* standard is not applicable in the present case. *Foy* involved First Amendment claims of disparate treatment by a religious group who had been investigated by state officials for child abuse and other potentially illegal conduct. The investigation was spurred after the Department of Human Resources took custody of a child, who had resided on the group's compound, after she alleged physical abuse at the hands of compound residents. The court, in *Foy*, emphasized that the defendants had produced evidence of "substantial" lawful motive. *Id.* at 1536. Thus, even if they were also "motivated by a dislike or hostility to certain protected behavior," the defendants were entitled to qualified immunity. *Id.* at 1534.

There is no evidence of a "substantial" lawful motive for the disparity about which Jackson complains. While budgetary restrictions might explain why UAB failed to hire another supervisor to work under Jackson, such restrictions do not explain why UAB permitted a black employee to work under working conditions different from those under which his similarly situated white counterparts worked. Certainly non-fiscal alternatives could have remedied this blatant disparity. Without undisputed evidence of a "substantial" lawful motive, Jackson's case is distinguishable from the facts in *Foy*.

21

*Foy* is also distinguishable because it involved child welfare laws whose parameters are not clearly established. *See Foy*, 94 F.3d at 1536. When the state officials in *Foy* became privy to allegations of child abuse, they were faced with "no clear legal standard [that] could firmly direct [them] when the time to act or not act was upon them." *Id.* Given the uncertainties in the law and the particular circumstances of the case, "a reasonable child custody worker could have considered Defendants' conduct arguably proper." *Id.* Despite the more exacting burden placed on the plaintiffs in *Foy*, the "basic qualified immunity question looms unchanged." *See id.* at 1534.

In contrast, "[i]t is beyond doubt" that the right to be free from racial discrimination was "clearly established," when the incidents occurred which give rise to the present case. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991). *Accord, Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995). Thus rather than to allow *Foy* to provide all of the guidance, this court is guided in its qualified immunity analysis by the broader Eleventh Circuit employment cases. *See Smith*, 45 F.3d 402; *Walker v. Schwalbe*, 112 F.3d 1127 (11th Cir. 1997). In these cases the court drew all reasonable inferences in favor of the complainant, and if the parameters of the law where clearly established, asked whether a reasonable officer could have believed his conduct was

constitutional.  *Smith*, 45 F.3d at 404 n.7, 407; *Walker*, 112 F.3d
at 1133.


Thus, the court must ask itself whether a reasonable state
official, in Baker's position, would have reasonably believed that
employer controlled disparities in working conditions between black
and white employees was lawful.  The answer is must be "No." *See
Ft. Lauderdale*, 923 F.2d at 1478 - 79 (noting that defendants would
not be immune from civil liability if they terminated plaintiff, a
police officer, based on reasons that would not have resulted in
termination of a white police officer); *Vaughn v. Edel*, 918 F.2d
517, 522 - 23 (11th Cir. 1990) (finding discrimination where
defendant failed to counsel and criticize black attorney, as it
would have done with a white attorney); *Ferrill v. The Parker
Group, Inc.*, 967 F. Supp. 472, 475 (N.D. Ala. 1997) (where this
court held that segregation of the work force by race violated
Title VII and § 1981).


Moreover, the peculiar facts of this case also suggest that
qualified immunity is inappropriate.  While the *Woods* consent
decree does not constitute an admission of liability, that lawsuit
and the terms of the resulting consent decree should have put Baker
on notice that different terms and conditions of employment between
black and white employees would, in all probability, violate

statutory and constitutional law, if not the consent decree itself. *See Tindall v. Montgomery County Commission*, 32 F.3d 1535, 1540 - 41 (11th Cir. 1994)(where judge in a prior lawsuit had admonished the employer not to terminate plaintiff in retaliation for her testimony, a reasonable person would have known that terminating plaintiff was unlawful). Indeed, the *Woods* decree specified that UAB and its employees were "enjoined and restrained from engaging in any employment practice pertaining to the Division of Facilities Management which has the purpose or the effect of discriminating against any person on the basis of his or her race." Plaintiff's Motion Ex. 1 at 3. Such language would have indicated to a reasonable person, in Baker's position, that he could not allow disparate working conditions between black and white employees. Accordingly, Baker is not entitled to his qualified immunity defense.

### Conclusion

Defendants are entitled to summary judgment on Jackson's failure-to-promote disparate treatment claim and all of Jackson's discharge claims. In addition, summary judgment is appropriate on Jackson's §§ 1981 and 1983 race retaliation claims. Plaintiff's motion to strike is moot. An appropriate, separate order will be entered.

24

DONE this ___30th___ day of October, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE